KSC/11.02.22



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Patricia McLane
Assistant United States Attorney
Patricia.McLane@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4942
MAIN: 410-209-4800
FAX: 410-962-3124

November 16, 2022

**Via Email Only**
Michael Lawlor, Esq.

Re:   United States v. David Banks,
      Criminal No. SAG-20-207

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, David Banks (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **November 28, 2022**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.     The Defendant agrees to plead guilty to **Counts One, Two and Three** of the Indictment, which charge the Defendant with Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That in the District of Maryland:

### Count 1: Hobbs Act Conspiracy

a.     On or about the dates alleged in the Indictment, the Defendant agreed with at least one other person to interfere with interstate commerce by way of a robbery; and

b.      That the Defendant knowingly and willfully became a member of the conspiracy.

## Count 2: Hobbs Act Robbery

a.      That, on or about July 7, 2019, the Defendant knowingly obtained or took the property of another, from the presence of another;

b.      That that the Defendant took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediately or in the future; and

c.      That as a result of the Defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

## Count 3: Brandishing a Firearm During and in Relation to a Crime of Violence

a.      That, the Defendant committed a crime of violence for which he might be prosecuted in a court of the United States, that is the crime charged in Count 2; and

b.      That the Defendant knowingly brandished a firearm during and in relation to the commission of the crime charged in Count 2.

### Penalties

3.      The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 1951 | N/A | 20 years | 3 years | $250,000 | $100 |
| 2 | 18 U.S.C. § 1951 | N/A | 20 years | 3 years | $250,000 | $100 |
| 3 | 18 U.S.C. § 924(c) | 7 years | Life | 5 years | $250,000 | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C.    §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

## Count 1 (Hobbs Act Conspiracy)

       a.    The parties agree the conduct covered by the conspiracy in Count One includes the robbery charged in Count Two and the other robberies detailed in the Statement of Facts in Attachment A. As a result, the parties anticipate that the calculation for Count One would be the same as the calculation for Count Two (below) but that the two counts would group together.

## Count 2 (Hobbs Act Robbery)

       b.    The parties agree that the guidelines calculation for Count Two include the June 12, 2019 carjacking and that the other robberies detailed in the Statement of Facts in Attachment A are treated as additional counts for the purposes of the guidelines calculation, pursuant to U.S.S.G. § § 1B1.2(c). Each robbery is treated as a separate group for the purposes of calculating the Guidelines, pursuant to U.S.S.G. § 3D1.2.

       c.    Group One - June 12, 2019 carjacking of S.A. and death of Tavon Lowther. Because a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, § 2A1.1 is applied, pursuant to § 2B3.1(c)(1). As a result, the base offense level for this Group is **forty-three (43)**.

       d.    Group Two - the July 7, 2019 armed robbery of Shoe City. This Office and the Defendant further agree that, pursuant to U.S.S.G. § 2B3.1(a), the base offense level for Count 1 is **20** pursuant to U.S.S.G. § 2B3.1(a) because the substantive offense was robbery. That offense level is increased by five (5) levels because a firearm was brandished, pursuant to § 2B3.1(b)(2)(C). Thus, the offense level for this group is **twenty-five (25)**.

       e.    Group Three - the July 17, 2019 armed robbery of the Metro PCS at 4003 Frederick Avenue in Baltimore. This Office and the Defendant further agree that, pursuant to U.S.S.G. § 2B3.1(a), the base offense level for Count 1 is **20** pursuant to U.S.S.G. § 2B3.1(a) because the substantive offense was robbery. That offense level is increased by five (5) levels because a firearm was brandished, pursuant to § 2B3.1(b)(2)(C). Thus, the offense level for this group is **twenty-five (25)**.

       f.    Group Four - the July 17, 2019 armed robbery of the Family Dollar at 5511 Edmondson Avenue in Baltimore. This Office and the Defendant further agree that, pursuant to U.S.S.G. § 2B3.1(a), the base offense level for Count 1 is **20** pursuant to U.S.S.G. § 2B3.1(a) because the substantive offense was robbery. That offense level is increased by five (5) levels because a firearm was brandished, pursuant to § 2B3.1(b)(2)(C). Thus, the offense level for this group is **twenty-five (25)**.

       g.    Group Five - the July 24, 2019 attempted armed robbery of V.J. at 4900 Liberty Road in Baltimore. This Office and the Defendant further agree that, pursuant to U.S.S.G. § 2B3.1(a), the base offense level for Count 1 is **20** pursuant to U.S.S.G. § 2B3.1(a) because the substantive offense was robbery. That offense level is increased by seven (7) levels because a firearm was discharged, pursuant to § 2B3.1(b)(2)(A). It is further increased by four (4) levels because the victim sustained serious bodily injury, pursuant to § 2B3.1(b)(3)(B). Thus, the offense level for this group is **thirty-one (31)**.

h.      Group Six - the July 28, 2019 attempted armed robbery of Stephen Tasker at 2800 Forest Glen Road in Baltimore, resulting in the death of Tasker. Because a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, § 2A1.1 is applied, pursuant to § 2B3.1(c)(1). As a result, the base offense level for this Group is **forty-three (43)**.

i.      Group Seven - August 12, 2019 armed robbery of the First Cash Pawn at 6623 Reisterstown Road in Baltimore. This Office and the Defendant further agree that, pursuant to U.S.S.G. § 2B3.1(a), the base offense level for this Group is **20** pursuant to U.S.S.G. § 2B3.1(a) because the substantive offense was robbery. That offense level is increased by five (5) levels because a firearm was brandished, pursuant to § 2B3.1(b)(2)(C). Thus, the offense level for this group is **twenty-five (25)**.

### Grouping

j.      The total offense level is calculated by taking the highest offense level and increasing that pursuant to § 3D1.4. Here, the highest offense level is **forty-three (43)**. One other group (Group Six) is also a level 43, so that adds one unit. The remaining groups are more than 9 levels less serious so they do not add any units. Thus, the offense level is increased two levels to **forty-five (45).**

### Count 3 (Brandishing a Firearm During and in Relation to a Crime of Violence)

k.      With respect to the conviction of Count 3, this Office and the Defendant agree that the guideline sentence for this count is the seven-year mandatory minimum term required by 18 U.S.C. § 924(c), and the term of imprisonment imposed under that section shall run consecutively to any other term of imprisonment, pursuant to U.S.S.G. § 2K2.4(b).

7.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

**The anticipated final offense level is 42 for Counts One and Two and a consecutive seven years for Count Three.**

8.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level.

Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

9.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11(c)(1)(C) Plea

10.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that **a total term of imprisonment of 300 months** in the custody of the Bureau of Prisons, is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, specifically including offenses not charged by the Government in light of the plea, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

11.     At the time of sentencing, this Office shall recommend a sentence of **a total term of imprisonment of 300 months**. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment and facts stipulated to in Attachment A. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including

the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

        c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

13.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

14.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

15.      The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

16.      The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17.      The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

18.      Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will

cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

19.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

20.    The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw the plea. If the Defendant persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, the Defendant's attorney, nor the Court can make a binding prediction or promise that the Court will accept this Agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

21.    This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

By: _____

Patricia McLane
Brandon Moore
Assistant United States Attorneys


I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11- 24- 22
Date

David Banks
David Banks


I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12.8.22
Date

Michael Lawlor, Esq.

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

From a time unknown, but no later than April 2019, the Defendant, David Banks, joined in an agreement with at least five co-conspirators to commit a series of carjackings and commercial robberies, during which two men were shot and killed by at least one member of the conspiracy. The agreement included using firearms to threaten and intimidate victims. Furthermore, in at least one carjacking, on June 12, 2019, a firearm was discharged, resulting in the death of Tavon Lowther; similarly, in at least one robbery, on July 28, 2019, a firearm was discharged, resulting in the death of Stephen Tasker. The conspirators would often use the stolen vehicles to commit additional criminal acts. The conspirators shared the proceeds of their exploits, with certain conspirators responsible for pawning any items recovered from the victims and the stolen vehicles.

Evidence linking Banks and his co-conspirators to crimes include historical cell-site location information and forensic evidence, to include ballistic evidence. Other evidence of the crimes includes victim and witness testimony; videos of the robberies from the commercial establishments; GPS information from carjacked vehicles; surveillance video from a carjacking on Haddon Avenue on June 9, 2019; recorded jail call conversations of conspirators; and cooperating witness interviews and admissions.

Banks agrees that he and one or more persons, directly or indirectly, reached an agreement to carjack, rob persons and businesses, and use firearms during such events. Banks agrees he knew that the purpose of the agreement was to carjack and commit armed robberies, and he joined the agreement with the intent to further that unlawful purpose. Banks agrees that one or more members of the agreement, including himself, took a substantive step to complete the agreement. He also agrees that members, among other things, promoted themselves and their activities on social media; concealed their acts by hiding, destroying, or disposing evidence; and generated profits for themselves and each other.

Banks agrees he personally participated in the following events:

- the June 12, 2019 carjacking of S.A. and death of Tavon Lowther: Banks agrees he and at least two conspirators carjacked S.A. and T.L. of a navy blue 2004 Acura MDX in front of the apartment complex at 4418 Franconia Drive. The conspirators had arrived at Franconia Drive in their own car. One conspirator remained inside, while Banks and two other conspirators got out of the car brandishing handguns. The men announced a robbery and demanded that S.A. and Tavon Lowther empty their pockets. S.A. was standing next to the driver's door of the Acura, the keys still in the ignition. S.A. ran. Tavon Lowther remained by the Acura and was shot and killed. A conspirator then drove the Acura away from Franconia Drive while Banks and another conspirator followed in a separate vehicle. Banks agrees the group took the Acura by means of force and violence and that he intended to cause death or serious bodily injury;

- the July 7, 2019 armed robbery of Shoe City: Banks agrees he and at least three other conspirators robbed the Shoe City store at 6534 Reisterstown Road in Baltimore. A co-conspirator brandished a semi-automatic pistol and ordered an employee to empty the cash register. They took the entire register when the employee could not open it and robbed a customer of a small amount of cash. Banks agrees he and the co-conspirators took money and property from the presence of the victims, against those victims' wills, by using actual or threatened force, violence, or fear of injury. He further agrees that the money or property stolen from the businesses affected interstate commerce;

- the July 17, 2019 armed robbery of the Metro PCS at 4003 Frederick Avenue in Baltimore, during which at least one member of the conspiracy brandished firearms;

- the July 17, 2019 armed robbery of the Family Dollar at 5511 Edmondson Avenue in Baltimore, during which at least one member of the conspiracy brandished firearms;

- the July 24, 2019 attempted armed robbery of V.J. at 4900 Liberty Road in Baltimore, during which at least one member of the conspiracy discharged a firearm ultimately resulting in the non-fatal shooting of K.K.;

- the July 28, 2019 attempted armed robbery of Stephen Tasker at 2800 Forest Glen Road in Baltimore, during which at least one member of the conspiracy discharged a firearm, striking and killing Tasker; and

- the August 12, 2019 armed robbery of the First Cash Pawn at 6623 Reisterstown Road in Baltimore, during which at least one member of the conspiracy brandished a firearm.

Banks agrees that he and the co-conspirators took money and property from the presence of the victims during the commercial robberies, against those victims' wills, by using actual or threatened force, violence, or fear of injury. He further agrees that the money or property stolen from the businesses affected interstate commerce.

All events occurred in the District of Maryland.

SO STIPULATED:

_____
Patricia McLane
Brandon Moore
Assistant United States Attorneys

_____
David Banks
Defendant

_____
Michael Lawlor, Esq.
Counsel for Defendant